UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OSVALDO HODGE,
    *Petitioner*,

v.

UNITED STATES OF AMERICA,
    *Respondent*.

No. 3:22-cv-1534 (JAM)

**ORDER DENYING MOTION FOR POST-CONVICTION RELIEF**

Petitioner Osvaldo Hodge seeks post-conviction relief pursuant to 28 U.S.C. § 2255. He claims that his trial counsel was ineffective when he counseled Hodge to enter a plea of guilty to a federal charge of conspiracy to distribute controlled substances. Because Hodge has failed to plausibly show that his counsel's representation was deficient or prejudicial, I will deny the motion.

**BACKGROUND**

On November 8, 2019, Hodge appeared before me to enter a plea of guilty to the charge of conspiracy to distribute heroin and cocaine.[1] At that hearing, I started by questioning Hodge to ensure that he was competent to proceed.[2] He explained that he was taking three medications, all for bipolar disorder.[3] When asked, "Is your mind clear as you stand here today?," Hodge answered, "More or less. Not completely, but I'm okay."[4]

---

[1] *See* Doc. #283 at 1 to *United States v. Rubiera-Herrera et al.*, 3:19-cr-00123 (D. Conn.).
[2] Doc. #827 at 2, 4-9 to *United States v. Rubiera-Herrera et al.*, 3:19-cr-00123 (D. Conn.).
[3] *Id.* at 4-6.
[4] *Id.* at 6.

1

His counsel, Attorney Bruce Koffsky, then explained that Hodge had checked himself into the Yale-New Haven Hospital Psychiatric Department several weeks before.[5] Attorney Koffsky told the court that he had spoken with Hodge's treatment team, who explained he was suffering from depression.[6] On September 25, 2019, Hodge's treatment counselor told Attorney Koffsky that Hodge "was healthy and competent enough to go forward with a change of plea."[7]

Attorney Koffsky added that he had spoken with Hodge at length the weekend before the plea hearing, when they reviewed the entire plea agreement again and Koffksy answered his questions.[8] Attorney Koffsky stated: "I believe he is competent. I believe he's making reasonable and rational decisions, and I don't know of any reason why you wouldn't go forward today."[9]

Attorney Koffksy explained to the Court that Hodge was concerned because, unlike in the state system, his counsel could not tell him in advance exactly what the sentence would be.[10] "Nonetheless," Attorney Koffsky concluded, "after my discussions with Mr. Hodge, I believe he is rational, reasonable, and ready to engage in a change of plea process with your Honor."[11]

I then asked Hodge, "do you agree with what your lawyer just said?"[12] He replied: "Yes."[13]

Next I confirmed with Hodge that he had "talked a lot about the case" with Attorney Koffsky, and I asked him "do you feel like you've had enough time to talk to him about the

---

[5] *Ibid.*
[6] *Id.* at 6-7.
[7] *Id.* at 7.
[8] *Ibid.*
[9] *Ibid.*
[10] *Id.* at 7-8.
[11] *Id.* at 8.
[12] *Ibid.*
[13] *Ibid.*

case?"[14] He answered "yes."[15] And he also answered "yes" when I asked him "Are you satisfied with the representation that he's given you?"[16]

I then confirmed that Hodge understood that he had a right to go to trial and that no one was forcing him to plead guilty.[17] I also explicitly advised Hodge that, because he was not a U.S. citizen, he very likely would be subject to removal or deportation from the United States as a result of a guilty plea.[18] Hodge was advised that under the terms of his plea agreement, his removal from the country was "presumptively mandatory" and that "he is nevertheless affirming that he wants to plead guilty regardless of any immigration consequences that his plea may entail even if the consequence is automatic removal from the United States."[19]

I confirmed that Hodge understood the elements of the conspiracy crime to which he was pleading guilty.[20] The government summarized the evidence that would establish a factual basis for the guilty plea:

> From January until April of 2019 the government received authorization to intercept a variety of telephones used by Mr. Rubiera-Herrera and his associates. Specifically, Mr. Hodge was intercepted on all three telephones used by Mr. Rubiera-Herrera again from the dates of January until the end of April. In these calls Mr. Hodge was intercepted talking to Mr. Rubiera-Herrera regarding distributing heroin and cocaine. The calls would reference gram amounts of usually in the smaller quantities around 10 grams or 15 grams. There was also a number of calls in which the two would arrange to meet and to conduct narcotics transactions. And they would discuss co-conspirators. For example, there was a call on April 10th when Mr. Hodge and Mr. Rubiera-Herrera discussed Mr. Claudio-Suarez who is another co-conspirator.
>
> Mr. Hodge was arrested by the New Haven Police Department as a result of this investigation after intercepted communications with Mr. Rubiera-Herrera on March 12th of 2019. At that time he was found with 5 grams of heroin and approximately $1,300 in cash.[21]

---

[14] *Ibid.*
[15] *Ibid.*
[16] *Id.* at 8-9.
[17] *Id.* at 9, 12.
[18] *Id.* at 11.
[19] *Id.* at 19.
[20] *Id.* at 12-14.
[21] *Id.* at 26.

3

Following the government's recitation of its evidence, I asked the government if "the evidence would show more than just a buyer-seller relationship," and the government responded "[t]hat is correct" and that "[t]he evidence would show that he redistributed both heroin and cocaine."[22] Then I asked Hodge "do you agree with what you just heard," and he replied "Yes."[23]

I also asked Hodge if there "[i]s there anything else you want me to know at this point about your involvement with this?"[24] He replied: "I did this for my own use."[25] After a pause, he continued by reading from a statement stating in relevant part: "I, Osvaldo Hodge, had an agreement with at least one other person to possess and to sell heroin and cocaine during the period included between October of 2018 to April of 2019" and that "I did sell cocaine and heroin."[26]

At the conclusion of the hearing, Hodge entered his guilty plea.[27] He told me that he did not need more time to think about his decision and "I don't want to go to trial because I don't know what could happen. Guilty."[28]

In October 2020, I sentenced Hodge to a term of imprisonment of 12 months and 1 day, followed by three years of supervised release—a sentence well below the applicable Sentencing Guidelines range.[29] In May 2022, after he had completed his prison term and was placed in removal proceedings, Hodge filed a motion for leave to file a late appeal, which I denied.[30]

---

[22] *Id.* at 27.
[23] *Ibid.*
[24] *Ibid.*
[25] *Ibid.*
[26] *Ibid.*; *see also* Doc. #1-4 (copy of written statement in both English and Spanish). Because the statement is in in both English and Spanish, Hodge cannot plausibly maintain that he did not understand what he was reading.
[27] *Id.* at 29.
[28] *Id.* at 28.
[29] *See* Doc. #588 to *Rubiera-Herrera et al.*, 3:19-cr-00123.
[30] *See* Docs. #814, #829 to *Rubiera-Herrera et al.*, 3:19-cr-00123. According to the federal Bureau of Prisons' website, Hodge was released from imprisonment on September 10, 2021. *See* Federal Bureau of Prisons, Find an

Several months later, Hodge filed the instant *pro se* motion for post-conviction relief pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel.[31] The government opposed, and Hodge filed a reply and supplemental evidence, which I have reviewed and considered for purposes of this ruling.[32]

## DISCUSSION

Under 28 U.S.C. § 2255, a federal prisoner in custody may move a court to vacate, correct, or set aside his conviction and sentence on the ground that he was convicted or sentenced in violation of law. *See Dhinsa v. Krueger*, 917 F.3d 70, 80-81 (2d Cir. 2019).[33] The prisoner bears the burden of showing facts or law establishing that the conviction or sentence was unlawful. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000). Absent a plausible showing that facts exist which would warrant a grant of relief, a court is not required to conduct an evidentiary hearing on a motion for post-conviction relief under 28 U.S.C. § 2255, especially to the extent that the motion is before the judge who presided over the underlying proceedings. *See Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011).

The Sixth Amendment to the U.S. Constitution guarantees the right of a criminal defendant to the effective assistance of counsel. In order for a defendant to show that he was deprived of his right to the effective assistance of counsel, they must satisfy the well-established, two-part standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, they must show deficient performance: that counsel's conduct "fell below an

---

Inmate, *available at* https://www.bop.gov/inmateloc/ (last accessed November 22, 2024). His term of federal supervised release was set to expire three years later, on September 10, 2024. At the time that Hodge filed his motion for post-conviction relief, he was "in custody" within the meaning of 28 U.S.C. § 2255 because he was still subject to the conditions of supervised release. *See Byrd v. Evans*, 420 F. App'x 28, 29 (2d Cir. 2011) (citing *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)).
[31] Doc. #1.
[32] *See* Docs. #6, #8, #13.
[33] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, brackets, and derivative citations for all quotations from cases.

objective standard of reasonableness" established by "prevailing professional norms." *Id.* at 687-88. Second, they must show that this deficient performance caused prejudice. *Id.* at 687.

As to the issue of whether counsel's performance fell below the constitutional minimum, a court must be "highly deferential" to the strategic choices of counsel and must "strongly presume" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. "This presumption is overcome only if counsel failed to act reasonably considering all of the circumstances." *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020). A court "must avoid the distorting effects of hindsight and consider the lawyer's perspective at the time the decision was made." *Ibid.* "If the attorney made a strategic choice after thoughtful consideration, that decision will be virtually unchallengeable." *Ibid.*

As to the issue of prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Melhuish*, 6 F.4th 380, 393 (2d Cir. 2021). A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Ibid.*

In the guilty plea context, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). In other words, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also United States v. Freeman*, 17 F.4th 255, 266 (2d Cir. 2021) (same).

Hodge raises three separate grounds for his ineffective assistance claim. First, he claims that Attorney Koffsky failed to confirm his mental competence and did not raise his lack of competence to the Court. According to Hodge, he was "confused and not fully aware of what

was happening" on the day of the plea hearing.[34] He adds that Attorney Koffsky "failed to consider" the symptoms listed in his medical records, including "low mood," "difficulties sleeping," and "decreased attention/concentration."[35] He also explains that, on the day of the plea, he was "under the influence of Suboxone," and implies that this medication impaired his judgment.[36]

But the guilty plea transcript tells a different story. I asked Attorney Koffsky at length about the competency issue, and Hodge agreed with Attorney Koffsky that he was competent to proceed. "Solemn declarations in open court carry a strong presumption of verity." *United States v. Fletcher*, 2024 WL 658818, at *2 (2d Cir. 2024) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). And I was satisfied from Hodge's demeanor and the nature of his responses to my many questions that he was competent to proceed.

Hodge has presented nothing beyond conclusory allegations to rebut the presumption, borne of his own statements, that he was competent and that his counsel adequately represented him with respect to any concerns of competency. *See Zografidis v. United States*, 2021 WL 2810142, at *3 (D. Conn. 2021) ("To the extent that Zografidis claims that his counsel allowed him to plead guilty while not competent to do so, this claim is betrayed by the transcript of the guilty plea hearing in which the Court took extensive measures to ensure that Zografidis was competent and that his plea was knowing and voluntary.") Accordingly, he has not established a plausible claim of ineffective assistance on this ground.

Hodge next argues that Attorney Koffsky failed to advise him of either his trial rights or the likely immigration consequences of a guilty plea.[37] But, even if this were true, the guilty plea

---

[34] Doc. #1 at 7 (¶ 14).
[35] *Id.* at 7 (¶ 16).
[36] *Id.* at 6 (¶ 13).
[37] Doc. #1 at 8 (¶ 17); Doc. #8 at 10.

7

transcript unequivocally establishes that Hodge knew of his trial rights and the likely immigration consequences of his guilty plea. So Hodge cannot show prejudice: that he would have declined to enter a guilty plea if he had been more fully advised of his rights and the immigration consequences by Attorney Koffsky. *See id.* at *3 (D. Conn. 2021) (no prejudice from counsel's "possible misadvice" in light of statements during plea hearing that removal was "presumptively mandatory" and "very likely, since you're not a U.S. citizen, you could be subject to deportation or removal from the United States" and that "you should assume, for purposes of today, you're going to face that kind of proceeding").

Hodge further argues that there was no factual basis for his guilty plea and that Attorney Koffsky failed to show him any evidence the government might be able to adduce against him. According to Hodge, he was a drug user, not a distributor. He claims that he tried to explain this to the Court—when he stated, "I did this for my own use"—but that his attorney interfered by passing him a written conspiracy plea that he then read into the record.[38] Hodge attempts to disavow these statements, insisting he was merely following Attorney Koffsky's "instructions."[39] But "[a] criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity, and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999).

Nor am I persuaded by Hodge's evidentiary proffer. He claims that the $1,300 found in his car was from a legal settlement, not drug dealing, and he submits a scanned check for $6,000 made out to him and a law firm.[40] But accompanying the check is a settlement statement

---

[38] Doc. #1 at 9-10 (¶¶ 19-20).
[39] *Ibid.*
[40] Doc. #13 at 2, 9.

showing that, after accounting for legal fees, Hodge took home only around $400.[41] This does little to undermine the evidence of drug sales activity that the government identified at the hearing and that Hodge did not refute.

In addition, following his guilty plea, Hodge proceeded to sentencing. There was no claim or argument at sentencing that Hodge was merely a buyer and user and that he had not knowingly and willfully joined a drug distribution conspiracy.[42] Nor did Hodge seek to file a timely appeal to challenge the factual basis for his guilty plea.

As for Attorney Koffsky's alleged failure to discuss with Hodge the evidence against him, I am again not persuaded. At the plea hearing, the government detailed the evidence it would have presented were the case to proceed to trial, and Hodge was given an opportunity to contest the government's account. He did not. He also acknowledged that he had spoken at length with Attorney Koffsky about the case, that he felt he had had enough time to do so, and that he was satisfied with Attorney Koffsky's representation. In sum, he has not plausibly alleged that Attorney Koffsky's representation was deficient or that he was prejudiced by any deficiency.

In short, Hodge has not stated plausible grounds to conclude that he was deprived of his right to effective assistance of counsel. Accordingly, no evidentiary hearing is warranted, and I will deny Hodge's motion for post-conviction relief.

## CONCLUSION

For the reasons stated above, the Court DENIES the motion for post-conviction relief pursuant to 28 U.S.C. § 2255 (Doc. #1). The Court GRANTS the motion for status update by means of this ruling (Doc. #16). The Court further DENIES as moot Hodge's renewed motion

---

[41] *Id.* at 8.
[42] *See* Doc. #870 (sentencing transcript) to *United States v. Rubiera-Herrera et al.*, 3:19-cr-00123 (D. Conn.).

for the appointment of counsel (Doc. #18). Because Hodge has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), no certificate of appealability shall enter.

The Clerk of Court shall enter judgment in favor of the United States and close this case.

It is so ordered.

Dated at New Haven this 22d day of November 2024.

                                          /s/ *Jeffrey Alker Meyer*
                                          Jeffrey Alker Meyer
                                          United States District Judge